IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2010

**STATE OF TENNESSEE v. MELVIN L. FINLEY**

**Appeal from the Circuit Court for Montgomery County**
**No. 40900317      Dee David Gay, Judge**

---

**No. M2010-00569-CCA-R3-CD - Filed February 3, 2011**

---

The Defendant, Melvin L. Finley, pleaded guilty to one count of aggravated robbery, a Class B felony. See Tenn. Code Ann. § 39-13-402(b). The trial court sentenced the Defendant as a Range I, standard offender to nine years in the Department of Correction. In this direct appeal, the Defendant contends that the trial court erred when it: (1) did not sentence him to the Community Corrections Program; and (2) did not consider his drug addiction as a mitigating factor. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and J.C. MCLIN, JJ., joined.

Adrienne L. Gilliam, Clarksville, Tennessee, for the appellant, Melvin L. Finley.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; John W. Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On November 24, 2009, the Defendant entered an "open" guilty plea to one count of aggravated robbery. At the Defendant's plea hearing, the prosecutor summarized the underlying facts of the offense as follows:

[T]his involved the cane low (phonetic spelling) supermarket. It is alleged by the owners of that supermarket that at that time, which was approximately a year ago, [the Defendant] was a regular customer.

The owner is a Mr. Patel. Mr. Patel related to the arriving investigating officer that a black male with a black semiautomatic came him [sic], ordered him to hand over all the money in the cash register at gun point, taking five cartons of Newport cigarettes as well.

Mr. Patel related during the course of the robbery he jumped across the counter, pulled off a blue bandana that the suspect was wearing, and pulled off his white sunglasses, got into a fight. Mr. Patel had a bloody nose, had a deep laceration in his left cheek.

. . . Mr. Patel, Mr. Patel's wife and a third employee all recognized the suspect as [the Defendant]. In order to verify that identification they went and checked the video; and on that same morning [the Defendant] came in with—of course, not wearing anything across his face at 8:12 in the morning, but he was wearing the coat, so they made a clothing identification as well. He had also applied for a job at cane low supermarket at one point, so they took out his resumé and all his personal information, and that is actually how they made the exact identification.

It is alleged that the video is of good quality and it is possible to identify [the Defendant] during the course of the struggle when Mr. Patel was pulling off the facial . . . things that he had on his face.

The trial court conducted the Defendant's sentencing hearing on February 24, 2010. The State offered no proof besides the Defendant's presentence report.

The Defendant testified that he graduated high school in 2005 and that he received a partial scholarship to attend Murray State University in Kentucky because of his skill in cross country and track and field. He recalled that he began attending Murray State in the fall of 2005. He described,

[M]y first semester started out okay, you know going to class and just the regular going to practice and stuff like that. I started going to parties and stuff, you know, throughout the week and on the weekend and I just really started experimenting with prescription drugs and other drugs and I slowly stopped going to class.

He said that he eventually started using cocaine when he went to parties on weekends.

The Defendant recalled that he received an academic warning at the end of his first semester because of his low grades and lost his scholarship at the end of his second semester. He testified that he returned to Murray State for a third semester but stopped going to classes, partied all the time, and increased his cocaine usage to four or five times per week. The Defendant stated that he received an academic suspension toward the end of his third semester of college.

The Defendant also testified that, to support his cocaine habit, he started selling marijuana. However, he soon began smoking more marijuana than he was selling and started to steal. He recalled that, three or four times per week for approximately one year, he stole DVDs from large retail stores and was never caught.

The Defendant's presentence report reveals that he was convicted of two misdemeanor offenses in Kentucky in 2008—shoplifting and a "weapons offense." The Defendant also testified that he had been charged with assault in Kentucky in the fall of 2006 and received a two-year term on pretrial diversion. Finally, the Defendant admitted that he had been placed on juvenile probation for six months after he had been caught shoplifting when he was eleven or twelve years old.

Ericka Harris, the Defendant's sister, testified that her brother "became distant" when he went to college. She said that "he stopped going to family events as much as he used to—he used to be like the comedian of the family, didn't see that any more." She recalled that she tried to talk to the Defendant about his change in behavior but that he "wouldn't really answer" her.

James Doyle testified that he had been a full-time substance abuse counselor for twenty years. Mr. Doyle said that, about a month before the hearing, he met with the Defendant for approximately ninety minutes. He recalled that he administered an assessment test to the Defendant and stated that the results indicated the Defendant "had a very serious drug problem." He said that the Defendant had "probably one of the lowest scores I have ever seen as far as depression, almost bordering on manic depression because of what had happened to him."

Mr. Doyle recommended that the Defendant be placed in an "in[-]patient treatment facility, preferably a long-term facility" that has a program twelve to eighteen months long. He said that if the Defendant was not able to attend a long-term in-patient program, then he would recommend a thirty-or forty-five-day in-patient program followed by residence in a halfway house with mandatory attendance at twelve-step meetings.

When asked what impact a long penitentiary sentence would have on the Defendant's potential for rehabilitation, Mr. Doyle said that "[i]t would be a negative effect." He explained, "Because once he came out of the penitentiary, he would not have learned the tools for rehabilitation and it wouldn't be very long before he would be right back into the old habits again." He also stated, though, that he believed the Defendant would accept an opportunity to be placed in a rehabilitation program in prison, if it was offered to him, "because he has the motivation to stop."

During the sentencing hearing, the Defendant acknowledged that there is a mandatory Department of Correction sentence for aggravated robbery but argued that his drug addiction constituted a "special need" and that he should be placed in the Community Corrections Program. See Tenn. Code Ann. § 40-36-106(c). The trial court rejected his argument and sentenced him as a Range I, standard offender to nine years in the Department of Correction. The Defendant now appeals.

**Analysis**

The Defendant contends that the trial court erred when it did not place him in the Community Corrections Program. Although he does not present it as a separate issue in his brief, he also argues that the "trial court erred by not actually applying [his] chemical dependency as a mitigating factor."

## I. Community Corrections

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). Because the Defendant was convicted of a Class B felony, the sentencing judge in this case was not required to even consider this guideline.

The principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. Tenn. Code Ann. § 40-35-103(5).

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. See Tenn. Code Ann. § 40-36-106(a)(2).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d).

We conclude that the trial court did not err by rejecting the Defendant's argument that he should be sentenced to community corrections. First, by statute, he was not eligible for community corrections because his aggravated robbery conviction was a violent offense, an

offense against a person, and an offense that involved the use of a weapon. See Tenn. Code Ann. § 40-36-106(a)(1)(B)-(D). Second, contrary to his argument during the sentencing hearing, he was not eligible for community corrections based on the "special needs" provision in section 40-36-106(c) of Tennessee Code Annotated. "[T]his [C]ourt has long and consistently held that in order to qualify under the special needs provision, the defendant must be statutorily eligible for probation." State v. Cowan, 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000). Persons convicted of aggravated robbery, which is codified in Tennessee Code Annotated section 39-13-402, are ineligible for probation by statute. See Tenn. Code Ann. § 40-35-303(a). Thus, the trial court did not err when it failed to sentence the Defendant to the Community Corrections Program. The Defendant is not entitled to relief on this issue.

**II. Mitigating Factor**

The Defendant argues that the trial court did not properly weigh the mitigating and enhancement factors before sentencing him to nine years in the Department of Correction. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] § 40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 254 S.W.3d at 345.

The sentencing range for standard offenders convicted of aggravated robbery, a Class B felony, is eight to twelve years. See Tenn. Code Ann. §§ 39-13-402(b), 40-35-112(a)(2). The trial court sentenced the Defendant to nine years in the Department of Correction. Although the Defendant argues that the trial court did not "actually" apply the Defendant's

drug addition as a mitigating factor, the record reveals otherwise. During the sentencing hearing, the trial court stated, "I find that [the Defendant's] a young person who has a drug problem and for whatever it is worth, I find that a mitigating factor." Then, the court went on to find that enhancement factor one applied to the Defendant. See Tenn. Code Ann. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range."). The trial court commented that "enhancement factor one is glaring and controlling and outweighs everything else as far as mitigating and enhancement factors here." Thus, because the weighing of mitigating and enhancement factors is left to the trial court's sound discretion, we conclude that the Defendant's argument that the trial court did not "actually" apply his drug addiction as a mitigating factor is without merit. The Defendant is not entitled to relief on this issue.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE